Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MURPHY, <br><br>Plaintiff, <br><br>vs. <br><br>PRA HEALTH SCIENCES, INC., COLIN SHANNON, JEFFREY T. BARBER, ALEXANDER G. DICKINSON, LINDA S. GRAIS, JAMES C. MOMTAZEE, GLENN D. STETTIN, and MATTHEW P. YOUNG, <br><br>Defendants. | Case No. **'21CV1064 GPC BGS** <br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br>JURY TRIAL DEMANDED |

Plaintiff John Murphy ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. Plaintiff brings this action against PRA Health Sciences, Inc. ("PRA Health" or the "Company") and the members of PRA Health's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell PRA Health to ICON plc ("ICON") through ICON's subsidiaries ICON US Holdings Inc. and Indigo Merger Sub, Inc. (the "Proposed Transaction").

2. On February 24, 2021, ICON announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each PRA Health stockholder will receive: (i) $80 in cash, and (ii) 0.4125 shares of ICON common stock for each share of PRA Health common stock they own.

3. On April 28, 2021, PRA Health filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, inter alia, it fails to disclose material information regarding: (i) the Company's and ICON's financial projections and the financial analyses performed by the Company's financial advisors, BofA Securities Inc. ("BofA") and UBS Securities LLC ("UBS"); (ii) potential conflicts of interest faced by BofA and UBS; and (iii) the background leading to the Proposed Transaction. Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains offices located in this District; (ii) one or more of the defendants either resides in or maintains offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of PRA Health.

9. Defendant PRA Health is a Delaware corporation, with its principal executive offices located at 4130 ParkLake Avenue, Suite 400, Raleigh, North Carolina 27612 and an office located at Pacific Center I, 1455 Frazee Road, Suite 900, San Diego, California 92108.  PRA Health's common stock trades on the Nasdaq Global Select Market under the ticker symbol "PRAH."

10. Defendant Colin Shannon ("Shannon") is Chairman of the Board, and has served as President, Chief Executive Officer ("CEO"), and a director of the Company since January 1, 2010.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

11. Defendant Jeffrey T. Barber has served as a director of the Company since November 2014.

12. Defendant Alexander G. Dickinson has served as a director of the Company since August 2017.

13. Defendant Linda S. Grais has served as a director of the Company since October 2015.

14. Defendant James C. Momtazee has served as a director of the Company since September 2013.

15. Defendant Glen D. Stettin has served as a director of the Company since September 2020.

16. Defendant Matthew P. Young has served as a director of the Company since February 2015.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

18. Relevant non-party ICON is a public limited company incorporated in Ireland, with its principal executive offices located at South County Business Park, Leopardstown, Dublin 18, Ireland. ICON specializes in the strategic development, management and analysis of programs that support clinical development - from compound selection to Phase I-IV clinical studies. ICON's common stock trades on the Nasdaq Global Select Market under the ticker symbol "ICLR."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19. PRA Health is one of the world's leading global contract research organizations ("CROs") by revenue, providing outsourced clinical development and data solution services to the biotechnology and pharmaceutical industries. The Company's therapeutic expertise includes areas

that are among the largest in pharmaceutical development, including oncology, immunology, central nervous system, inflammation, respiratory, cardiometabolic, and infectious diseases.

20. PRA Health's global clinical development platform includes more than 75 offices across North America, Europe, Asia, Latin America, Africa, Australia and the Middle East and more than 17,500 employees worldwide. Since 2000, PRA Health has participated in approximately 4,000 clinical trials worldwide. In addition, PRA Health has participated in the pivotal or supportive trials that led to U.S. Food and Drug Administration or international regulatory approval of more than 95 drugs.

21. On March 12, 2021, PRA Health announced its fourth quarter and full year 2020 financial results. For the quarter, the Company reported revenue of $873.5 million, an increase of 9.1%, or $73.2 million, compared to the fourth quarter of 2019 at actual foreign exchange rates. Adjusted net income was $101.2 million for the three months ended December 31, 2020, representing an increase of 2.5% compared to the three months ended December 31, 2019. For the twelve months ended December 31, 2020, revenue was $3,183.4 million, an increase of 3.8%, or $117.1 million, compared to the twelve months ended December 31, 2019 at actual foreign exchange rates. Commenting on the Company's financial results, defendant Shannon stated:

> I am delighted to report fourth quarter revenue and earnings that significantly outperformed the updated guidance we provided back in November. I am also excited to report another quarter of record gross and net new business awards. We finished the year on a very positive note and I believe we are extremely well positioned for the coming year.

22. On February 24, 2021, ICON issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> DUBLIN--ICON plc, (NASDAQ: ICLR), a global provider of outsourced drug and device development and commercialisation services to the pharmaceutical, biotechnology and medical device industries, and government and public health organisations, today announced it has entered into a definitive agreement to acquire PRA Health Sciences, Inc. (NASDAQ: PRAH) in a cash and stock transaction valued at approximately $12 billion, with the per share merger consideration consisting of

$80 in cash and 0.4125 shares of ICON stock. The consideration represents an approximately 30% premium to PRA's closing price as of February 23rd, 2021.

The transaction brings together two high-quality, innovative and growing organisations with similar cultures and a shared focus on high quality and efficient clinical trial execution from Phase 1 to post-approval studies.

Biopharma and medical device customers of all sizes will benefit from broader service offerings and geographic footprint, deeper therapeutic expertise, expansive healthcare technology innovation, and functional talent and capabilities. PRA's mobile and connected health platforms and real world data and information solutions together with ICON's Accellacare site network, home health services and wearables expertise, will be combined to deliver differentiated decentralised and hybrid trial solutions to meet growing customer needs.

The transaction is anticipated to be highly accretive delivering double-digit accretion in the first full year and growing to 20%+ thereafter, driven by growth momentum, estimated annual run-rate cost synergies of $150 million, and the combined effective tax rate decreasing to 14%, both to be realised in approximately 4 years.

Dr. Steve Cutler, Chief Executive Officer, ICON plc, said:

"The combined company will create a new paradigm for accelerating clinical research and bringing new medicines and devices to market. Both ICON and PRA have track records of robust growth and performance and we are ready to build on this unrivalled position of strength, utilising the outstanding talent in both organisations. With broader and deeper operational scale combined with innovative technology and real world data solutions, we will enable all customers to reduce their development time and cost. We will be the leading provider of de-centralised and hybrid trial solutions through the integration of our data capabilities, health platforms and Accellacare site network. The transaction will be highly accretive from full year 1 post-close."

Colin Shannon, Chairman and Chief Executive Officer, PRA Health Sciences, said:

"I joined PRA 13 years ago to help build a company that would make a difference in the world and transform the way we developed new medicines. The way we do it now takes far too long and costs far too much. Critically ill patients can't wait for cures. Underserved populations can't wait for access. Every day counts. COVID-19 created a platform for change that we cannot ignore. The pandemic accelerated the adoption of mobile health technologies and healthcare intelligence tools – tools that PRA helped develop – at an unprecedented rate. The union of PRA and ICON will create an organization that has the people, data and technology to bring those cures to patients faster and more efficiently than ever before. We are thrilled to be joining with ICON, a company with a similar culture and values. I'm deeply indebted to PRA's 19,000 talented employees who have helped us bring this vision closer to reality. We stand together now because patients can't wait."

**TRANSACTION DETAILS**

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Under the terms of the transaction, PRA shareholders will receive per share, $80 in cash and 0.4125 shares of ICON stock.  Upon completion of the transaction, PRA shareholders will own approximately 34 percent of the shares of the combined company and ICON shareholders will own approximately 66 percent.

**MANAGEMENT, GOVERNANCE AND HEADQUARTERS**

The combined company will be headquartered in Dublin, Ireland. Dr. Steve Cutler, Chief Executive Officer of ICON plc, will serve as Chief Executive Officer of the combined company and Brendan Brennan, Chief Financial Officer of ICON plc, will serve as Chief Financial Officer.  Ciaran Murray will serve as the Chairman of the Board of Directors.

Current PRA Chairman and Chief Executive Officer, Colin Shannon will join the board post the closing of the transaction along with one additional board member from PRA.

**The Proxy Misleads PRA Health Stockholders by Omitting Material Information**

23.     On April 28, 2021, PRA Health filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince PRA Health's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) the Company's and ICON's financial projections and the financial analyses performed by the Company's financial advisors, BofA and UBS; (ii) potential conflicts of interest faced by BofA and UBS; and (iii) the background leading to the Proposed Transaction.

*Material Omissions Concerning the Company's and ICON's Financial Projections*

24.     The Proxy omits material information regarding the Company's and ICON's financial projections.

25.     For example, the Proxy fails to disclose all line items underlying the Company's and ICON's (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

26.     The Proxy also omits material information regarding BofA's and UBS' financial analyses.

27.     The Proxy describes BofA's and UBS' fairness opinions and the various valuation analyses they performed in support of their opinions.  However, the description of BofA's and UBS'

fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, PRA Health's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA's and UBS' fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

28. With respect to BofA's *Selected Publicly Traded Companies Analysis* for PRA Health and ICON, the Proxy fails to disclose: (i) the individual financial metrics for each of the comparable companies observed by BofA in the analyses; (ii) the Company's and ICON's net debt; (iii) the Company's and ICON's fully diluted outstanding shares; (iv) PRA Health's and ICON's respective calendar year 2021 and 2022 EBITDA (SBC-Unburdened); and (v) PRA Health's and ICON's respective calendar year 2021 and 2022 EPS (SBC/Amort.-Unburdened).

29. With respect to BofA's *Selected Transactions Analysis* for PRA Health, the Proxy fails to disclose: (i) the individual financial metrics for each of the comparable transactions observed by BofA in the analyses; (ii) the Company's net debt; (iii) the Company's fully diluted outstanding shares; and (iv) PRA Health's calendar year 2020 and 2021 EBITDA (SBC-Unburdened).

30. With respect to BofA's *Discounted Cash Flow Analysis* of PRA Health and ICON, the Proxy fails to disclose: (i) PRA Health's and ICON's respective terminal year standalone EBITDA (SBC-Unburdened); (ii) the terminal values for PRA Health and ICON; (iii) the individual inputs and assumptions underlying the discount rates ranging from 7.5% to 10.0% for PRA Health and 7.25% to 9.5% for ICON; (iv) each company's net debt; and (v) each company's fully diluted outstanding shares.

31. With respect to BofA's *Wall Street Analyst Price Targets* analysis for PRA Health and ICON, the Proxy fails to disclose the price targets observed and the sources thereof.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

32. With respect to BofA's *Has/Gets Analysis*, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 7.5% to 10.0%; (ii) debt; and (iii) the number of fully diluted outstanding shares utilized in the analysis.

33. With respect to UBS' *Discounted Cash Flow Analysis* of PRA Health and ICON, the Proxy fails to disclose: (i) PRA Health's and ICON's respective standalone LTM Adj. EBITDA for fiscal year 2025; (ii) the terminal values for PRA Health and ICON; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0%; (iv) net debt for each company; and (v) each company's fully diluted outstanding shares.

34. With respect to UBS' *Discounted Cash Flow Analysis* of the pro forma combined company, the Proxy fails to disclose: (i) the after-tax unlevered free cash flows for the combined company; (ii) the combined company's estimated LTM Adj. EBITDA for fiscal year 2025; (iii) the combined company's terminal values; (iv) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0%; (v) the combined company's projected net debt; and (vi) the combined company's fully diluted outstanding shares.

35. With respect to UBS' *Analysts Price Targets for PRA* and *Analysts Price Targets for ICON* analyses, the Proxy fails to disclose the price targets observed and the sources thereof.

36. Without such undisclosed information, PRA Health stockholders cannot evaluate for themselves whether the financial analyses performed by BofA and UBS were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which BofA's and UBS' opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

37. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "ICON Unaudited Financial Forecasts," "PRA Unaudited Financial Forecasts," and "Opinion of PRA's Financial Advisors."

*Material Omissions Concerning BofA's and UBS' Potential Conflicts of Interest*

38. The Proxy fails to disclose material information concerning the potential conflicts of interest faced by BofA and UBS.

39. The Proxy fails to disclose the details of any services that BofA and its affiliates have in the past provided, or are currently providing, to ICON, and any compensation received for services provided.

40. The Proxy also fails to disclose the details of any services that UBS and its affiliates have in the past provided, or are currently providing, to PRA Health or ICON, and any compensation received for services provided.

41. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Opinion of PRA's Financial Advisors."

*Material Omissions Concerning the Background of the Proposed Transaction*

42. The Proxy fails to disclose material information concerning the background of the Proposed Transaction.

43. The Proxy fails to disclose whether the Company entered into a confidentiality agreement with the interested party referred to in the Proxy as "Company A" and, if so, the terms of the confidentiality agreement, including whether it included a standstill provision or "don't-ask-don't-waive" standstill provision that is presently precluding Company A from submitting a topping bid for the Company.

44. Any reasonable PRA Health stockholder would deem the fact that the most likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

45. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Background of the Merger."

46. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and ICON's financial projections, the financial analyses performed by BofA and UBS, BofA's and UBS' potential conflicts of interest, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

51. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

53. Plaintiff repeats all previous allegations as if set forth in full.

54. The Individual Defendants acted as controlling persons of PRA Health within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of PRA Health, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

57. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, PRA Health's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of PRA Health, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 4, 2021

**OF COUNSEL**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
   -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

- 14 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS